[Civ. No. 14599. Second Dist., Div. Two. Nov. 22, 1944.]

GRAND AVENUE REALTY COMPANY (a Corporation), Appellant, v. SECURITY FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), as Trustee, etc., Respondent; ADOLPH FLEISHMAN et al., Cross-defendants and Appellants.

Hiram E. Casey for Appellants.

Warren E. Libby for Respondent.

McCOMB, J.—Appellant seeks reversal of a judgment in favor of respondent, after trial before the court without a jury, decreeing foreclosure of a trust indenture.

The essential facts are these:

June 23, 1937, the parties hereto executed a trust indenture which contained, among others, article VII, section 7, which read so far as relevant here thus:

"Concurrently with the execution hereof the Company will cause the Trustee under its trust indenture dated as of April 20th, 1925, executed by the Company to secure its First Mortgage Leasehold Seven Per Cent (7%) Serial Gold Bonds, to pay over and deposit with the Trustee hereunder the sum of Three Thousand Eight Hundred Twenty-Five Dollars ($3,825.00) as and for a 'Rental Guaranty Fund,' and the Company covenants and agrees that such sum shall be maintained with the Trustee as long as any of the bonds secured hereby are outstanding."

February 17, 1939, respondent, the trustee named in the trust indenture served notice upon appellant, Grand Avenue Realty Company, that it had failed to maintain with the trustee the "Rental Guaranty Fund" mentioned in section 7 of article VII of the Trust Indenture. Within sixty days appellant company paid to the trustee $4,923.87, which fund was used to pay taxes in the amount of $3,670.29 and an installment of rents due in the sum of $1,250. On October 7,

1942, the trustee again gave appellant company notice reading in part as follows:

"2. That the Company has failed to maintain with the Trustee the 'Rental Guaranty Fund' in the amount of of $3,825.00 mentioned and referred to in Section 7 of Article VII of the trust indenture and that such default has continued for a period of 60 days after written notice thereof, and that by reason thereof an event of default exists as defined in Subdivision (e) of Section 1 of Article VI of the trust indenture."

The notice further stated that holders of not less than 25 per cent in amount of the bonds secured by the trust indenture and outstanding had made written request upon the trustee to declare the principal of the bonds to be payable immediately and that the trustee declare all of the outstanding bonds due and payable and demand immediate payment thereof. The company did not at any subsequent time restore the "Rental Guaranty Fund."

There are four questions necessary for us to determine which will be stated and answered hereunder seriatim:

First: *Was appellant company required, under the provision quoted above of article VII, section 7 of the trust indenture, to replenish the "Rental Guaranty Fund" whenever it fell below the sum of $3,825 during the term of the trust indenture?*

This question must be answered in the affirmative. In addition to section 7, article VII of the trust indenture set forth above, section 4, article VII of the trust indenture declares that the "Rental Guaranty Fund" is a part of the trust estate securing the bonds in this language:

". . . the words 'Property' or 'Trust Estate' shall, where not inconsistent with the context and unless otherwise expressly provided in this mortgage or deed of trust, be held and construed to include real and personal property of the Company of every kind and nature whatsoever that is subject to the lien of this mortgage or deed of trust, including all money held by the Trustee hereunder."

Likewise in section 9, article VII of the trust indenture appears this language:

"All moneys held by the Trustee in the Rental Guaranty Fund and in the Income Account shall be deemed, until paid out as aforesaid, a part of the trust estate and additional

security for the bonds issued and outstanding hereunder.''

Section 8, article III of the trust indenture reads in part thus:

''The Company covenants and agrees that this mortgage or deed of trust now is and always will be kept a first lien . . . upon the leasehold interest and other property described or mentioned in the granting clause hereof and upon all property that hereafter shall be acquired with the proceeds of bonds secured hereby.''

It is thus clear from the very wording of the trust indenture that appellant company agreed to establish and thereafter maintain the ''Rental Guaranty Fund'' as a part of the trust estate, free from all liens ahead of the claim of the bonds.

The word ''maintain'' is thus defined in 38 Corpus Juris (1925) page 335:

'' 'Maintain' ordinarily means to preserve something which is already in existence.; to support what is already brought into existence; . . .''

In *Bosqui* v. *City of San Bernardino*, 2 Cal.2d 747 [43 P. 2d 547], the Supreme Court of California on page 758 said:

''The Supreme Court of Kansas in a case construing a contract requiring an electric service company to maintain a transmission line, said: 'The ordinary meaning of the word ''maintain'' is to keep in a particular state or condition, especially with reference to efficiency; to support; to sustain, to keep up; nor to suffer to fail or decline.' [Citing numerous cases.]'' See, also, *Child* v. *Washed Sand & Gravel Co.*, 181 Minn. 559 [233 N.W. 586, 587].

This construction of the word maintain as used in section 7, article VII of the trust indenture appears to be in accord with appellant's own views for on page three of their brief, they say:

''The plan (of reorganization) further provided that the newly executed Trust Indenture would replace certain other Trust Indentures which the Company had executed in 1925 to secure the payment of said 1925 bonds. One of these indentures bearing date June 15, 1925, was executed for the express purpose *of setting up* a so-called 'Rental Guaranty Fund' in the amount of $3825.00 *as additional security* for the payment of the bonds. Under the reorganization plan, this fund was transferred to the Trustee to be held *as additional security* for the payment of the newly issued bonds.''

Through this statement, appellant concedes that the "Rental Guaranty Fund" was provided "as additional security" for the bonds. If this fund was not to be "maintained" by the company independently of the income of the property, it failed in being "additional security" for the bonds. In addition the covenant of the trust indenture is "that such sum shall be maintained with the trustee so long as any of the bonds secured hereby are outstanding" and that "the company covenants and agrees" that such sum shall be maintained. This constitutes a direct covenant of the company, independent of the income from the leasehold estate, to keep the "Rental Guaranty Fund" intact in the sum of $3,825.

■ Second: *Did appellant company by paying to the trustee $4,923.87 on July 20, 1942, in response to the notice of default of June 1, 1942, cure such default?*

This question must be answered in the negative. The letter transmitting the sum of $4,923.87, was dated July 20, 1942, signed "Grand Avenue Realty Company by Eugene J. Meyberg, Secy." and reads in part thus:

"Enclosed find check for $1050.00 on account of rent collected. This added to the sum now in the 'Income Account' will enable you to pay the July 1st installment of $1250.00, rent due under the ninety-nine year lease. Also find enclosed check for $3670.29 to pay the last half of taxes that became payable last April and because there was not sufficient funds in the 'Income Account' or the 'Rental Guaranty Fund' to enable you to pay the same, you gave us a sixty day notice of default dated May 29, 1942."

It is apparent from the foregoing provisions of appellant company's letter that the money transmitted to the trustee was not for the purpose of replenishing the "Rental Guaranty Fund," nor can it be validly contended that this sum of money was deposited in the rental guaranty fund, since section 1, article IV of the trust indenture read in part as follows:

"The funds deposited by the Company with the Trustee under Section 2 of Article III hereof shall be credited to a fund to be designated 'Income Account' and shall be applied, or set aside by the trustee in the following manner and *order of priority,* to wit:

"(a) To the payment of ground rent as the same becomes due under the terms of the ninety-nine (99) year lease, and

taxes and/or assessments, before the same become delinquent.

"(b) To reimburse or replenish any sum that may be used out of the trust fund of $3,825.00 referred to in Section 7 of Article VII hereof and for the purpose of preventing forfeiture of the ninety-nine (99) year lease in the event that the income is insufficient to pay the rent when due."

 Third: *Did the trustee abandon its intention to declare a default pursuant to the notice served February 17, 1939, since the trustee took no further action to enforce the default for several years after the notice was served?*

This question must also be answered in the negative. Section 20, article VI of the trust indenture read in part thus:

"No delay or omission of the Trustee or of any holder of bonds secured hereby to exercise any right or power arising from any default, shall impair any such right or power or shall be construed to be a waiver of any such default or acquiescence therein. . . ."

The foregoing provision makes it clear that there was no waiver or abandonment by the trustee by delaying the enforcement of the default of appellant company.

 Fourth: *Did holders of 25 per cent of the outstanding bonds authorize and request the trustee to declare the maturity of said bonds and to foreclose the trust indenture?*

This question must be answered in the affirmative. So far as material on this point, section 3, article VI of the trust indentures provides as follows:

"If one or more of the events of default shall happen the Trustee, upon the written request of the holders of twenty-five per cent (25%) in amount of the bonds secured hereby and then outstanding, and upon being indemnified to its satisfaction, shall by notice in writing delivered to the Company in the manner prescribed in section 5 of Article VII hereof, declare the principal of all bonds secured hereby then outstanding to be due and payable immediately, and upon any such declaration the same shall become and be immediately due and payable, anything in this mortgage or deed of trust or in said bonds contained to the contrary notwithstanding."

Section 4, article VI of the trust indenture reads thus:

"If one or more of the events of default shall happen, the Trustee, upon the written request of the holders of twenty-five per cent (25%) in amount of the bonds secured hereby

and then outstanding, and upon being indemnified to its satisfaction, shall proceed to protect or enforce its right or rights of the bondholders under this mortgage or deed of trust or to enforce the guaranty of the guarantors of said bonds, by a suit in equity or action at law, either for the specific performance of any covenant or agreement contained herein, or in aid of the execution of any power herein granted, or for the foreclosure of this mortgage or deed of trust, or for the enforcement of any other appropriate legal or equitable remedy as the Trustee shall deem most effectual in support of any of its rights or duties hereunder; and upon instituting such proceedings or in order to take possession as hereinbefore provided, the Trustee shall be entitled to the appointment of a receiver of the trust estate and to the sale of the trust estate as an entirety.''

Section 5, article VII of the Trust Indenture reads thus:

''The Company shall at all times maintain an office in California where notices for it may be sent by the Trustee. The mailing of any notice by the Trustee to the Company at the last address of such office of which the Trustee shall have written notice, shall constitute sufficient notice to the Company for all purposes hereunder.''

Section 2, article VIII in the trust indenture reads thus:

''Any request, consent, direction, resolution or other instrument required by this mortgage or deed of trust to be signed and executed by bondholders may be in any number of concurrent writings of similar tenor, and may be signed or executed by such bondholders in person or by attorney or agent appointed in writing. Proof of the execution of any such request, direction, resolution or other instrument, or of the writing appointing any such attorney or agent, and of the ownership of bonds, if made in the following manner, shall be sufficient for any purposes of this mortgage or deed of trust and shall be conclusive in favor of the trustee with regard to due action taken by it under such request, consent, direction or other instrument.

''(a) The fact and date of the execution by any person of any such writing or instrument may be proved by the certificate of any officer in any jurisdiction who by the laws thereof has power to take acknowledgments within said jurisdiction, certifying that the person signing such writing or instrument acknowledged before him the execution thereof.

"(b) The ownership of registered bonds shall be proved by the register of such bonds.

"Any request, consent or direction given by any bondholder shall bind all future holders of the same bond."

It is conceded that $25,250 principal amount represents 25 per cent of the bondholders or a total of twenty-six bonds. Appellant concedes that the owners of twenty-nine bonds signed requests to the trustee to declare the bonds due and to foreclose the trust indenture. It is claimed, however, that:

(1) A. G. Judd, a holder of one bond died subsequent to his signing a request to the trustee to declare the bonds due and foreclose the indenture and that the public administrator had taken over his estate prior to the filing of the foreclosure proceedings. Such fact is immaterial in the present case and does not invalidate the request to the trustee in view of the provisions of section 2, article VIII of the trust indenture which reads thus:

"Any request consent or direction given by any bondholder shall bind all future holders of the same bond."

(2) Annie T. Heintz signed, as guardian of the estate of Fetnah White, incompetent, and that at the time the request was signed, Annie T. Heintz was no longer guardian because Fetnah White had died.

This contention is without merit since the record discloses that the request was signed by Annie T. Heintz, executrix of the last will of Fetnah White, deceased.

(3) The request signed by Frances O'Leary Brady owner of two bonds was signed on October 23, 1942, which was sixteen days after the declaration of the maturity of the bonds.

Such contention is also immaterial since the record discloses that Mrs. Brady had signed a prior request in September, 1942.

(4) The request signed by Frances K. and Harry B. West, as joint tenants, owners of one bond, was dated October 11, 1942, which was subsequent to the date of the declaration of the maturity of the bonds.

This objection is likewise without merit since the record discloses that these bondholders had signed a prior request on July 30, 1942.

From the foregoing facts it is apparent that 25 per cent of the outstanding bondholders did authorize and request respondent trustee to declare the bonds matured, and to foreclose the trust indenture because of appellant company's

failure to maintain the "Rental Guaranty Fund" in the sum of $3,825 as provided in section 7, article VII of the trust indenture agreement.

In view of our conclusions, it is unnecessary to discuss other questions presented by counsel.

For the foregoing reasons the judgment is affirmed.

Moore, P. J., concurred.

Wood (W. J.), J., deeming himself disqualified, did not participate.